Rockingham, }
Dec. 5, 1922. }

MINERVA CAPELLE, *Adm'x*, v. UNITED STATES FIDELITY AND GUARANTY COMPANY & a.

A contract "to indemnify the assured from liability imposed by law for loss by reason of the . . . use . . . of" a certain automobile was construed to be, under Maine law, a contract to indemnify him from liability and not an agreement to indemnify him from loss.

A judgment in tort recovered by a person injured against one so insured may be enforced in equity against the insurer in the event of the assured's insolvency.

BILL IN EQUITY, by the administratrix of Vienna R. Breed. The defendants are the United States Fidelity and Guaranty Company of Baltimore, Md., and Philip Trober of Lewiston, Maine. Trober applied to the defendant company at the Lewiston office

for liability insurance and the company gave him a policy by the terms of which it agreed to indemnify him from liability imposed on him by law by reason of his ownership, maintenance or use of the automobile described in the policy.

Trober while driving from Massachusetts to Maine over the Lafayette road and while the policy was in force, ran into the plaintiff's intestate and injured her so severely that she died. The plaintiff sued and recovered a judgment against Trober, and as he had no property which could be seized on execution, filed this bill praying that the proceeds of the policy may be applied in satisfaction of her judgment against Trober.

The court found that the plaintiff was entitled to the relief prayed for unless the law of Maine as evidenced by *Frye* v. *Company*, 97 Me. 241, precludes a recovery and transferred that question without a ruling. The court found that Trober was driving the automobile described in the policy at the time the accident happened and the company excepted. Other facts are stated in the opinion.

Transferred by *Marble*, J., from the January term, 1922, of the superior court.

*Sleeper & Brown* (*Mr. Sleeper* orally), for the plaintiff.

*Henry V. Cunningham* (of Massachusetts) and *Banigan & Banigan* (*Mr. Cunningham* orally), for the defendant company.

*Stewart E. Rowe*, for Trober.

Young, J. The company concedes it can be found that the automobile near where the accident happened was the one described in the policy, but contends, that it cannot be found Trober was driving this automobile when the accident happened. The evidence relevant to that issue is that Trober ran into the plaintiff's intestate while driving an automobile through Hampton Falls and that the automobile described in the policy was found in Hampton without anyone in it soon after the accident and only a mile and a half from the place where it happened.

Instead, therefore, of there being no evidence to sustain the court's finding that Trober was driving the automobile described in the policy when he ran into the plaintiff's intestate, that is the only conclusion of which the evidence is fairly capable. If it is conceded, as the defendant contends, that this is a Maine contract and that the rights and liabilities of the parties are governed by the law

of Maine as evidenced by *Frye* v. *Company*, 97 Me. 241; 54 Atl. Rep. 395, the test to determine whether the plaintiff is entitled to the relief prayed for is to inquire what the contract Trober made with the company was. Was it, as the defendant contends, an agreement to indemnify him from loss, or, as the plaintiff contends, an agreement to indemnify him from liability? *Frye* v. *Company*, 97 Me. 241.

The only evidence relevant to that issue is the policy itself, and if the words of the indemnity clause are given their ordinary meaning the company agreed to indemnify Trober from liability, for by it the company agreed "to indemnify the assured from liability imposed by law for loss and / or expense arising or resulting from claims upon the assured for damages on account of bodily injuries or death resulting at any time therefrom, suffered by any person or persons as the result of an accident occurring while this policy is in force, by reason of the ownership, maintenance or use . . . of the automobiles . . . described in statement 7 hereof."

In other words, if the language of this clause is given any meaning of which it is fairly capable, the contract the company made with Trober was one of indemnity from liability. This is true not only of the indemnity clause but also of paragraph B, s. 2 of the policy, for that provides that "no action by the Assured shall lie against the Company until the amount of the damages for which the Assured is liable by reason of any casualty covered by this policy is determined, either by a final judgment against the Assured or by agreement between the Assured and the plaintiff with the written consent of the Company, nor unless such action is brought within two years after the rendition of such final judgment."

This section provides that an action by the assured will lie as soon as a claim covered by the policy is reduced to a judgment, for saying that no suit will lie until that is done is but another way of saying that a suit may be brought when that is done.

In other words, this section provides that the assured may sue the company as soon as a judgment has been recovered against him on a claim covered by the policy, and the fact the assured may sue the company when that is done is what distinguishes a contract to indemnify the assured from liability from one to indemnify him from loss. 14 R. C. L. 55, s. 13; *Frye* v. *Company*, 97 Me. 241.

It must be held, therefore, that s. 2 of paragraph B tends to the conclusion that the contract the company made was to indemnify Trober from liability, for there is no merit in the company's con-

tention that the office of s. 2 is not to limit the situation which must exist in order for the assured to maintain an action on the policy, but to prevent him interfering in the settlement of claims and thus defraud the company, for that is obviously the office of s. 4 of this paragraph, which provides that "The Assured shall not voluntarily assume any liability; nor interfere in any negotiations or legal proceedings conducted by the Company on account of any claim; nor, except at Assured's own cost, settle any claim; nor, without the written consent of the Company previously given, incur any expense, except as provided in Art. IV. hereof."

In short, all the evidence relevant to the issue we are considering tends to the conclusion that the company agreed to indemnify Trober from liability, consequently the plaintiff is entitled to the relief prayed for.

*Exception overruled.*

All concurred.