## K. BELL & ASSOCIATES, INC., Plaintiff,

### v.

## LLOYD'S UNDERWRITERS, Defendant.

### No. 92 Civ. 5249 (KTD).

United States District Court,
S.D. New York.

July 21, 1993.

Lilly Sullivan Purcell Barkan & Junge, P.C. (Steven L. Barkan, Armand P. Mele, of counsel), New York City, for plaintiff.

Mendes & Mount (Leo W. Fraser, III, Barbara S. Agulnek, of counsel), New York City, for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, K. Bell & Associates, Inc., ("K. Bell") commenced this diversity action on July 12, 1992, against defendant, Lloyd's Underwriters ("Lloyd's"). On October 6, 1992, defendant moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

*Facts Alleged*

K. Bell, a New York corporation licensed to act as an insurance broker and reinsurance intermediary, obtained two insurance broker's Error and Omissions policies (the "Policies") from Lloyd's Underwriters, a United Kingdom consortium. Complaint ¶¶ 1–4. The complaint alleges that the Policies obligated Lloyd's to:

> reimburse plaintiff for all sums which plaintiff should become legally obligated to pay as damages by reason of any negligent act, error, or omission committed or alleged to have been committed by the plaintiff, or by any person for whose negligent acts, errors, or omissions plaintiff was legally responsible, which 2 [sic] arose out of the conduct of the insured's professional activity as an insurance broker, insurance agent, or general insurance agent.

*Id.* at ¶ 6. K. Bell's complaint also asserts that the aggregate coverage under the Policies provided coverage for $2,000,000.00 subject to a $10,000.00 deductible. *Id.* at ¶ 5.

From 1980–1982, K. Bell was the insurance broker to the American Marine Insurance Group ("AMIG"). *Id.* at ¶ 7. In early August of 1985, AMIG commenced an action (the "Underlying Action") against K. Bell, and others, in New York State Supreme Court, New York County. *Id.* at ¶¶ 9–10. K. Bell asserts that they promptly notified Lloyd's of this claim by forwarding a copy of the Summons and Complaint to Lloyd's broker, on August 9, 1985. *Id.* at ¶ 12. After almost ten months had passed, on June 6, 1986, Lloyd's responded reserving its rights in regards to possible late notice of claims, and applications of exclusions (f) and (g) of the Policies, through a letter from its attorneys. *Id.* at ¶ 14.

Throughout the duration of the Underlying Action, attorney's for Lloyd's periodically requested and received status reports of the Underlying Action from K. Bell's attorneys. *Id.* at ¶¶ 15–31. On November 18, 1991, summary judgement was entered against K. Bell in the Underlying Action in the amount of $686,266.64 plus interest. K. Bell's attorneys informed Lloyd's of this decision and

advised that they expected Lloyd's to either post a bond or letter of undertaking, so that K. Bell could pursue an appeal. *Id.* at ¶¶ 32, 33. By letter dated February 27, 1992, Lloyd's formally declined coverage under the Policies. *Id.* at ¶ 38. Subsequently, a final judgement totaling $1,192,233.77 was entered against K. Bell, and, thereafter, AMIG successfully restrained all of K. Bell's funds to ensure satisfaction of the judgment. On or about July 12, 1992, K. Bell commenced the instant action.

### K. Bell's Claims

K. Bell's complaint asserts that Lloyd's failure to provide coverage under the Policies constituted a breach of contract. Additionally, K. Bell's complaint asserts that the doctrines of equitable estoppel and waiver preclude Lloyd's from declining coverage under the Policies. K. Bell further claims entitlement to punitive damages due to Lloyd's bad faith.

## DISCUSSION

### Motion to Dismiss

■ Defendants now move, pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint. On a motion to dismiss, I must read the complaint in the light most favorable to the claimant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Additionally, I cannot dismiss the complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir. 1984).

### Breach of Contract

■ In support of its motion to dismiss, Lloyd's argues that K. Bell has failed to adequately plead a cause of action for breach of contract. The elements required to state

a valid claim for breach of contract are: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach. *Nordic Bank PLC v. Trend Group Ltd.,* 619 F.Supp. 542, 561 (S.D.N.Y.1985). Nevertheless, it is not necessary for a complaint alleging breach of contract to specifically state each element individually. *Id.* at 561. *Posner v. Minnesota Mining & Manufacturing Co., Inc.,* 713 F.Supp. 562, 563 (E.D.N.Y.1989). Rule 8 of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim" for the sole purpose of placing defendants on notice of the claims against them. 2A James W. Moore *et al.,* Moore's Federal Practice ¶ 8.17[7] (2d ed. 1993).

■ When read in the light most favorable to the claimant, K. Bell, the complaint sufficiently sets forth a cause of action sounding in breach of contract. The complaint clearly alleges the existence of a contract between the parties. Complaint at ¶¶ 4–6. Further, the allegations contained in the complaint indicate that K. Bell, by filing a notice of claim, and by keeping Lloyd's up to date on the status of the Underlying Action, performed its obligations under the Policies in satisfaction of the pleading requirement of due performance. *Id.* at ¶¶ 12, 16–31. The complaint also satisfies the requirement that plaintiffs asserting a contract breach claim actually allege a breach. Simply stated, K. Bell's allegation that Lloyd's failed to provide coverage due under the Policies suffices to place Lloyd's on notice of a claim against them.[1] Lastly, K. Bell's complaint alleges damages resulting from the alleged breach. Accordingly, K. Bell has adequately pleaded the elements necessary to state a cause of action for breach of contract, and, therefore, Lloyd's motion to dismiss this claim must be denied.

### Estoppel

■ K. Bell's complaint asserts that Lloyd's should be estopped from invoking a

---

1. The arguments raised by Lloyd's in support of its motion to dismiss the contract claim concentrate on the fact that the grant of summary judgment in the Underlying Action was not for an act covered by the Policies. This argument, along with many others set forth by counsel for Lloyd's, would be more appropriate in the setting of a motion for summary judgment and have no place in support of the instant motion to dismiss for failure to state a claim.

policy exclusion to deny coverage six and one-half years after the notice of claim was filed. Premised on the equitable maxim that no party should be permitted to take advantage of its own wrongs, equitable estoppel prevents a party from enforcing or asserting rights where its own conduct has induced another to justifiably and detrimentally rely upon the belief that such enforcement would not be sought. *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663, 667, 436 N.E.2d 1265, 1269 (1982); *see Travellers Int'l. AG v. Trans World Airlines, Inc.*, 722 F.Supp. 1087, 1098 (S.D.N.Y.1989). To properly plead equitable estoppel the party seeking its protection must allege: (1) lack of knowledge of the true facts; (2) reliance on the conduct of the party to be estopped; and (3) a prejudicial change in its position. *See Broadworth Realty Associates v. Chock 336 Broadway Operating, Inc.*, 168 A.D.2d 299, 300, 562 N.Y.S.2d 630, 632 (1st Dep't 1990) (citing *Airco Alloys Division v. Niagara Mohawk Power*, 76 A.D.2d 68, 81, 430 N.Y.S.2d 179, 188 (4th Dep't 1980)).

■ Reading the complaint in the light most favorable to the claimant it is clear that K. Bell has adequately alleged the essential elements of equitable estoppel. The complaint states that K. Bell: (1) was unaware of Lloyd's intent to deny coverage; (2) relied on the belief that Lloyd's would provide coverage under the terms of the policies; and (3) was prejudiced by Lloyd's delay in denying coverage to the extent that it would have settled the underlying lawsuit prior to the entry of judgment. *See* Complaint at ¶¶ 47–51.

■ In support of its motion to dismiss, however, Lloyd's argues that, in the context of insurance law, an estoppel cannot arise where the insured remains in control of its defense throughout the underlying action and the insurer reserved its rights to assert non-coverage under the policy. (Lloyd's Letter in Reply to K. Bell's Opposition to the Motion to Dismiss, at 2, 4). Under New York law it is true that where an insurer undertakes the defense of an action on the behalf of an insured without reserving policy defenses it cannot be heard to argue, subse-

quently, that coverage does not exist. *Albert J. Schiff Assoc., Inc. v. Flack*, 51 N.Y.2d 692, 699, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980). While the contraposition of this principle, as propounded by Lloyd's, may create an inference in favor of preventing an estoppel, it does not prevent the assertion thereof, as other acts of the insurer may have worked to prejudice the insured. *See O'Dowd v. American Surety Co. of New York*, 3 N.Y.2d 347, 355, 165 N.Y.S.2d 458, 463–64, 144 N.E.2d 359, 363 (1957) (insurer may be estopped upon showing that delay in notification prejudiced insured); *Ashland Window & Housecleaning Co. v. Metropolitan Casualty Ins. Co. of New York*, 269 A.D. 31, 36, 53 N.Y.S.2d 677, 680 (1st Dep't 1945) (where insurer's unreasonable delay in disclaiming liability under policy results in prejudice to insured, insurer is estopped from asserting noncoverage). Accordingly, Lloyd's motion to dismiss the estoppel claim is denied.

*Waiver*

■ K. Bell also claims that Lloyd's waived its right to assert the exclusion clause to deny coverage because it delayed six and one-half years after receiving the notice of claim before doing so. Although often mistakenly used interchangeably with estoppel, waiver is a voluntary and intentional relinquishment of a known and existing right. *Schiff*, 51 N.Y.2d at 698, 435 N.Y.S.2d at 975, 417 N.E.2d at 87. Waiver differs from estoppel in that it depends on the intent of the party against whom the assertion lies and does not require any showing of reliance by the asserting party. *Nassau Trust*, 56 N.Y.2d at 184, 451 N.Y.S.2d at 668, 436 N.E.2d at 1269. A proper claim of waiver should state that the waiving party voluntarily and intentionally relinquished a right, with knowledge of all the facts and circumstances that would constitute the entitlement to that right. *See id.* 57 N.Y.Jur.2d *Estoppel* §§ 75, 87 (1986).

■ Although K. Bell's waiver allegation is sparsely worded, when broadly construed it suffices to state a claim. K. Bell alleges that they promptly notified Lloyd's of the Underlying Action and, thereafter, periodically apprised Lloyd's of the action's status. K. Bell further alleges that Lloyd's took no

action until six and one-half years after it had filed the notice of claim. Complaint at ¶¶ 44–46. Thus, K. Bell's allegations indicate that Lloyd's was aware of the facts and circumstances required to deny coverage, and that its conduct in failing to do so implicitly demonstrates its intent to waive the applicable policy exclusion.

Lloyd's argues, however, that, as a matter of law, waiver is inapplicable where the issue focuses on whether the policy provides coverage for the liability in question. This argument, however, is inappropriate in support of a motion to dismiss, as the facts are yet to be developed. Accordingly, Lloyd's motion to dismiss K. Bell's claim of waiver must be denied.

*Bad Faith*

K. Bell also asserts what appears to be a claim for punitive damages based on Lloyd's bad faith in failing to decline coverage until six and one-half years after receiving a notice of claim, and in failing to fulfill its obligations under the Policies. In New York, allegations amounting to a breach of an insurance contract, without more, are insufficient as a matter of law to sustain a claim for punitive damages. *Carat Diamond Corporation v. Underwriters at Lloyd's London*, 123 A.D.2d 544, 548, 506 N.Y.S.2d 708, 711 (1st Dep't 1986); *Jacobson v. New York Property Insurance Underwriting Assoc.*, 120 A.D.2d 433, 435, 501 N.Y.S.2d 882, 884 (1st Dep't 1986). Indeed, punitive damages will not be permitted in the context of a breached insurance agreement unless the allegations supporting the breach demonstrate that the insurance company's actions have worked a fraud upon the general public. *Jacobson*, 120 A.D.2d at 435, 501 N.Y.S.2d at 884. The complaint in the instant matter fails to even remotely approach this stringent standard. The claim for punitive damages, therefore, must be dismissed.

For all of the foregoing reasons, Lloyd's motion to dismiss K. Bell's complaint is granted solely as to the claim for punitive damages and denied in all other respects.

SO ORDERED.